**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **JONATHAN GUY, individually and on behalf of all persons similarly situated,** : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **DMG INSTALLATIONS, INC., CENTRAL COMMUNICATIONS, INC., and MEDIACOM COMMUNICATIONS CORP.,** : <br> : <br> **Defendants.** : | No. 4:20-cv-331 <br><br> **COMPLAINT—CLASS AND COLLECTIVE ACTION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Jonathan Guy, through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Class and Collective Action Complaint against Defendants DMG Installations, Inc. ("DMG"), Central Communications, Inc. ("CCI"), and Mediacom Communications, Corp. ("Mediacom") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Iowa state laws. Plaintiff alleges that although Defendants classified them and other similarly situated technicians as independent contractors, they were in fact Defendants' employees under the FLSA and Iowa state wage laws, were not paid for all hours worked, nor paid minimum wage or overtime, and that Defendants made deductions from their compensation that were not for their benefit. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

**JURISDICTION AND VENUE**

1. Jurisdiction over Plaintiff' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to Plaintiff' claims occurred within this judicial district, and Defendants maintain physical locations within this judicial district.

## PARTIES

4.     Plaintiff Jonathan Guy is an individual residing in Des Moines, Iowa.  Between approximately December 2018 and May 2020, Plaintiff Guy worked for Defendants as a cable installation technician.

5.     While working for Defendants, Plaintiff Guy work for Defendants out of a DMG/CCI facility in Des Moines, Iowa.  During his work for Defendants, Plaintiff Guy worked five to six days a week, about twelve hours per day, and did not receive overtime compensation at any time during the class period.

6.     Defendant DMG Installations, Inc., is a Missouri corporation with its principal places of business located in Des Moines, Iowa. DMG is in the business of providing and managing cable installers who install and repair cable television, internet and phone service to customers of Defendant Mediacom.  In approximately 2019, DMG adopted the fictitious name "Central Communications, Inc." and continues to do business under its fictitious name. DMG hires cable installation technicians throughout the United States but intentionally misclassifies these technicians as independent contractors, even though they are in fact employees.

7.     Defendant Central Communications, Inc., is a fictitious name adopted by DMG in 2019 with its principal place of business in Des Moines, Iowa.  When Plaintiff refers to DMG only in the paragraphs below, this is meant to include CCI.

8. Defendant Mediacom Communications Corp. is a Delaware corporation that regularly performs business in Iowa and throughout the United States. Mediacom's principal place of business is in Mediacom Park, New York. Mediacom is in the business of providing, installing and repairing cable television, internet and phone service for residential and business customers throughout the Midwest and Southeast United States.

## CLASS DEFINITIONS

9. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following opt-in litigants:

> All technicians who were classified as independent contractors while performing installation work for DMG Installations, Inc., Central Communications, Inc., and Mediacom in the United States from September 3, 2017, to the present (the "FLSA Class").

10. Plaintiff bring Counts II and III of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of himself and the following class:

> All technicians who were classified as independent contractors while performing installation work for DMG Installations, Inc., Central Communications, Inc., and Mediacom in the United States from September 3, 2018 to the present (the "Iowa Class").

11. The FLSA Class and Iowa Class are together referred to as the "Classes."

12. Plaintiff reserve the right to redefine the Classes prior to filing a motion for notice to similarly situated employees pursuant to 29 U.S.C. § 216(b), prior to filing a motion for class certification pursuant to FED. R. CIV. P. 23, and thereafter, as necessary.

## FACTS

13. Mediacom provides its customers all over the United States with cable television, internet, and telephone services.

14. Mediacom contracts with DMG to perform installations and troubleshoot for its customers in Iowa.

15. In addition, upon information and belief, Mediacom also contracts with DMG to perform installations and troubleshoot for its customers in California.

16. At the same time, Mediacom retains its own staff of employee cable, internet, and telephone installers.

17. DMG utilizes technicians, such as Plaintiff, to install and troubleshoot Mediacom cable communications products throughout the United States, including in Iowa and California.

18. Between approximately 2018 and 2020, Plaintiff worked as a cable technician for Defendants out of Des Moines, Iowa.

19. Defendants improperly misclassified Plaintiff and Class Members as independent contractors, when the economic reality of their work is that of an employee, and Defendants retained the right of control and, in fact, actually did control the work of Plaintiff. Plaintiff and Class Members qualify as employees of both DMG and Mediacom under the FLSA and Iowa law, as further described below.

## DMG/CCI EMPLOYS PLAINTIFF AND CLASS MEMBERS

20. The work performed by Plaintiff and Class Members is an integral part of DMG's business.

21. DMG instructs Plaintiff and Class Members concerning how to do their work and dictates the details of the performance of their jobs. For example:

    a. DMG requires Plaintiff and Class Members to perform their work in accordance with DMG's policies, manuals, standard operating procedures and Mediacom's requirements.

  b. Plaintiff and Class Members were required to report to a DMG/CCI facility each day by 7:30 a.m.

  c. DMG assigns each technician his complete routes for the day, and the technicians are required to perform the jobs in the order they are assigned within time windows designated by Defendants.

  d. DMG requires Plaintiff and Class Members to wear a uniform with a logo stating "DMG" then later "Central Communications." The shirts and hats stated "Contractor for Mediacom." The uniform included shirts, hats, and khaki pants.

  e. DMG requires Plaintiff and Class Members to wear badges stating "DMG" and later "Central Communications" and "Contractor for Mediacom."

  f. DMG required Plaintiff and Class Members to display DMG magnetic logos on their vehicles at all times stating "DMG," then later "Central Communications," and "Contractor for Mediacom."

  g. DMG, not Plaintiff or Class Members, conducts all of the billing and invoicing directly to Mediacom for the technicians' work.

  h. Plaintiff and Class Members have no control over what prices to charge. All negotiations over the cost of the work are determined between DMG and Mediacom.

  i. Plaintiff and Class Members are not permitted to provide Defendants' customers with any additional products without the authorization of Defendants.

  j. DMG and Mediacom performs in-field inspections of Plaintiff's and Class Members' work.

  k. DMG required Plaintiff and the other Class Members to start each job before the end of the time window because DMG was penalized by Mediacom for any late installation.

  l. DMG requires Plaintiff and Class Members to be monetarily liable for any missing inventory, security tool or equipment.

  m. Defendants, not Plaintiff or Class Members, may change the terms of the working arrangement without notice at any time.

22. Upon information and belief, at all relevant times Mediacom was the only client of DMG and was the sole source of DMG's income.

23. As a result, DMG's earnings are significantly driven by the number of technicians performing installation services for DMG's Mediacom customers and the fees that DMG charges Mediacom for these services.

24. DMG is in the business of providing Mediacom cable installation and services. Plaintiff and Class Members installed and provided technical services to Mediacom's residential and commercial customers.

25. In addition to reserving the right to control the work performed by Plaintiff and Class Members, in their contracts DMG, in fact, does exercise control over the method and manner in which Plaintiff and Class Members perform their labor for Defendants' clients.

26. DMG requires Plaintiff and Class Members to report the beginning and end of each installation throughout the day.

27. Defendants tracked each technician's progress throughout the day; and if a technician was running late, an employee of DMG or Mediacom would call the technician to find out why he was late.

28. DMG tracks Plaintiff's and Class Members' performance through customer surveys generated and maintained by Mediacom.

## MEDIACOM JOINTLY EMPLOYED PLAINTFFS AND CLASS MEMBERS

29. An employee may have multiple employers that are simultaneously liable under the FLSA. 29 C.F.R. § 791.2.

30. Mediacom exerts significant control over DMG, as well as its technicians, regarding the essential terms and conditions of the employment of Plaintiff and Class Members.

31. Mediacom has the power to and does terminate the technicians employed by DMG.

32. Mediacom exercises supervision and control over Plaintiff and the Class Members' work schedules.

33. Mediacom generates the work schedule for each technician, including his assignments and the order those assignments must be completed.

34. Mediacom requires technicians to adhere to thirty-minute or two-hour arrival windows and requires that technicians be available for evening and weekend installations.

35. Plaintiff and Class Members are required to use Mediacom's dispatch system and are in frequent contact with Mediacom personnel throughout the workday.

36. If there was a customer complaint, Mediacom would call the technicians directly.

37. Additionally, DMG managers were required to be in contact with Mediacom on a daily basis regarding the performance of the technicians.

38. Mediacom performed daily quality control checks of the installations performed by Plaintiff and Class Members. If the quality control checks identified any issues, the technicians would be charged and would be required to fix any problems without compensation.

39. Mediacom maintained customer survey ratings of the technicians' performance.

40. The technicians wore uniforms identifying them as installers "for Mediacom."

41. Mediacom assigned the technicians unique identification numbers.

42. Mediacom developed and assigned the technicians' daily routes and set time windows for each job.

43. Technicians were not authorized to provide any additional services to customers without Mediacom approval.

44. Mediacom employed contractor supervisors who constantly monitored the daily progress of the technicians, frequently called the technicians if they were running late or Mediacom received a complaint from a customer, and performed regular in-field quality control inspections.

45. The Mediacom contractor supervisor would also request daily updates from DMG's supervisors about the progress of the technician's work and often required a DMG supervisor to meet with him in person.

46. While using Plaintiff and the Class Members to perform installations, Mediacom used employee technicians to perform similar work.

## PLAINTIFF AND CLASS MEMBERS ARE DEFENDANTS' EMPLOYEES AS A MATTER OF ECONOMIC REALITY

47. Plaintiff and Class Members perform core work that is necessary to DMG's businesses, which is providing installation and repair services for residential and commercial customers of Mediacom.

48. Plaintiff and Class Members perform core work that is necessary to Mediacom's business, which is providing the installation and repair services that Mediacom promises to its customers and which Mediacom controls through its own managers, administrative staff, dispatchers, and quality control inspectors.

49. Plaintiff and Class Members are not in business for themselves and have no meaningful opportunity for profit or loss. They are assigned all of their work by Defendants and are paid a flat rate which is dictated to them by Defendants.

50. Plaintiff and Class Members' investment in tools and insurance they are required by Defendants to purchase is minor relative to the Defendants' investment in the equipment and infrastructure necessary to provide cable television, internet, and phone services to Mediacom customers.

51. Cable installation requires no special skill as it can be learned during a training period that lasts no longer than a few weeks. Moreover, Plaintiff and Class Members are not required to exercise business skills, judgment, or initiative, as all of their work is provided by Defendants and they are paid at rates determined solely by Defendants.

52. Plaintiff work more or less on a full-time, permanent basis for Defendants. In fact, Plaintiff worked for Defendants for approximately eighteen months, working five to seven days a week on a full-time basis. Class Members similarly worked exclusively for Defendants on a full-time basis.

53. As described above, Defendants exercise extensive and nearly complete control over every aspect of Plaintiff's and Class Members' work.

54. By virtue of the extensive control Defendants exert over them and the nature of their relationship with Defendants, the technicians are not independent business operators or agents of independent business operators, as Defendants have classified them, but rather, all technicians that perform work on behalf of Defendants are employees of Defendants under the FLSA and Iowa state law.

55. Defendants have intentionally misclassified Plaintiff and the Classes to avoid Defendants' obligations under the FLSA and state wage laws. Defendants save thousands of dollars in avoiding expenses associated with its core business by not providing Plaintiff and the Classes with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

### DEFENDANTS SUBJECT PLAINTIFF AND THE CLASS MEMBERS TO AN UNLAWFUL PAYMENT SCHEME

56. Plaintiff and Class Members are paid a flat rate on a per-job basis with a rate schedule determined by Defendants at the time of the service.

57. Defendants' pay policies for Plaintiff and Class Members include chargebacks. Defendants make frequent chargebacks for equipment and damage claims made by customers, and deduct them from the technicians' paychecks.

58. Additionally, Defendants deduct a chargeback if any further work is required within thirty days of an installation performed by the technician. Plaintiff and the Class Members had no opportunity to dispute a claim of a faulty installation.

59. DMG's technicians are required to purchase or rent equipment and tools and deduct amounts from their paychecks for meters and an application needed to log the technicians' jobs.

60. Plaintiff and Class Members were also required to purchase their own insurance and name DMG as the certificate holder.

61. Plaintiff worked on average between five to six days per week, ten to twelve hours per day. Plaintiff observed that Class Members routinely work the same schedule.

62. Plaintiff and Class Members routinely worked in excess of forty hours per week each week.

63. Defendants, pursuant to their policies and practices, failed and refused to pay overtime compensation for all hours worked over forty in a workweek to Plaintiff and Class Members.

64. DMG requires new technicians to work a two-week training period and pays them only $300 each week, and the technicians do not receive minimum wage during their training periods.

65. Defendants have shifted certain capital costs to Plaintiff and the Class while retaining behavioral and financial control over them in the same way it would over any of its employees.

66. Furthermore, Plaintiff and Class Members often fail to receive minimum wage for all hours worked due to: 1) deductions taken from their pay; 2) being required to perform repair work without compensation; and 3) being required to pay for equipment and insurance that are for the benefit of Defendants.

67. Defendants have intentionally misclassified Plaintiff and Class Members to avoid Defendants' obligations under the FLSA and state wage laws. Defendants save thousands of dollars in avoiding payroll withholdings and other expenses associated with its core business by not providing Plaintiff and the Classes with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

68. Plaintiff bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class as defined above.

69. Plaintiff desires to pursue his FLSA claim on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

70. Plaintiff and the FLSA Class are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated minimum for all hours worked. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

71. Specifically, Defendants misclassified Plaintiff and the FLSA Class as independent contractors and paid them a piece rate and no overtime.

72. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

73. Defendants employ many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. mail and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## **CLASS ACTION ALLEGATIONS**

74. Plaintiff bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of himself and the Iowa Class defined above.

75. The members of the Iowa Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty members of the Iowa Class.

76. Plaintiff will fairly and adequately represent and protect the interests of the Iowa Class because there is no conflict between the claims of Plaintiff and those of the Iowa Class, and

Plaintiff's claims are typical of the claims of the Iowa Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

77. There are questions of law and fact common to the proposed Iowa Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Iowa has violated and continues to violate common law through its policy or practice of not paying its technicians for all hours worked and overtime compensation.

78. Plaintiff's claims are typical of the claims of the Iowa Class in the following ways, without limitation: (a) Plaintiff is a member of the Iowa Class; (b) Plaintiff's claims are of the same policies, practices and course of conduct that form the basis of the claims of the Iowa Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Iowa Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Iowa Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Iowa Class members.

79. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Iowa Class predominate over any questions affecting only individual Class Members.

80. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair

and efficient adjudication of this controversy. The Iowa Class is readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Iowa Class would create the risk of inconsistent or varying adjudications with respect to individual Iowa Class members that would establish incompatible standards of conduct for Defendants.

81. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Iowa Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

82. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Iowa Class. Plaintiff envisions no difficulty in the management of this action as a class action.

### COUNT I
### Violation of the FLSA Minimum Wage and Overtime Provisions
### (On Behalf of Plaintiff and the FLSA Class)

83. All previous paragraphs are incorporated as though fully set forth herein.

84. The FLSA requires that covered employees be compensated overtime pay for all hours worked over forty hours at no less than one and a half times their regular rate of pay. See 29 U.S.C. § 207.

85. Additionally, the FLSA requires employers must provide workers' weekly wages "in cash or in facilities," "free and clear" of improper deductions, at a rate no lower than the minimum wage rate ($7.25 since July 24, 2009). See 29 U.S.C. § 206(a)(1).

86. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the

interest of an employer in relation to an employee," 29 U.S.C. 203(d). The FLSA's definition of "employ" broadly covers anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. 203(g).

87. Defendant DMG is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s) because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

88. Defendant Mediacom is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s), because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

89. At all relevant times, Plaintiff and the FLSA Class are covered employees entitled to the above-described FLSA's protections. See 29 U.S.C. § 203(e).

90. Plaintiff and the FLSA Class are entitled to be paid overtime for hours worked over forty in a workweek, pursuant to 29 U.S.C. § 207.

91. Plaintiff and the FLSA class are entitled to be paid minimum wage for all hours worked "free and clear" of deductions pursuant to 29 U.S.C. § 206.

92. Defendants do not maintain accurate records of all hours that Plaintiff and the FLSA Class worked each workday and the total number of hours worked each workweek as required by the FLSA. See 29 C.F.R. § 516.2(a)(7).

93. Defendants, pursuant to their policies and practices, knowingly failed to pay Plaintiff and the FLSA Class overtime compensation for all hours worked over forty in a workweek in violation of 29 U.S.C. § 207.

94. Plaintiff and the FLSA class did not receive the minimum wage for their training periods.

95. Plaintiff and the FLSA class did not receive minimum wage in weeks where they incurred substantial deductions from their pay.

96. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

97. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Iowa Wage Payment Collection Law
### (On Behalf of Plaintiff and the Iowa Class)

98. All previous paragraphs are incorporated as though fully set forth herein.

99. Iowa's Wage Payment Collection Law ("IWPCL") requires an employer to pay all wages due to its employees.  See Iowa Code § 91A.5.

100. Defendant DMG is subject to the wage requirements of the IWPCL because DMG is an "employer" under Iowa Code § 91A.2.

101. Defendant Mediacom is subject to the wage requirements of the IWPCL because Mediacom is an "employer" under Iowa Code § 91A.2.

102. At all relevant times, Plaintiff and the Iowa Class Members are covered employees entitled to the above-described IWPCL protections.  See Iowa Code § 91A.2.

103. Plaintiff and the Iowa Class are not exempt from the requirements of the IWPCL for wage payments.

104. Defendants, pursuant to their policies and practices, made unlawful deductions from Plaintiff and the Iowa Class Members compensation in violation of the IWPCL. Iowa Code § 91A.5.

105. Pursuant to Iowa Code § 91A.8, an employer such as Defendants who fails to pay an employee wages in conformance with the IWPCL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

106. In violating Iowa law, Defendants acted willfully and with reckless disregard of clearly applicable IWPCL provisions.

## COUNT III
## Unjust Enrichment Under Iowa Law
## (On Behalf of Plaintiff and the Iowa Class)

107. All previous paragraphs are incorporated as though fully set forth herein.

108. Defendants received and benefited from the uncompensated labors of Plaintiff and the Iowa Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

109. At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and the Iowa Class without paying wages for all hours worked, by making unauthorized deductions from Plaintiff's pay, and by requiring Plaintiff to pay for Defendants' own business expenses.

110. By reason of having secured the work and efforts of Plaintiff and the Iowa Class without paying wages for all hours worked as required by law, Defendants enjoyed reduced overhead with respect to their labor costs and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiff and the Iowa Class.

111. Accordingly, it would be inequitable for Defendants to retain the benefit of Plaintiff's and the Iowa Class's services without paying them wages for all hours worked as required by law.

112. Plaintiff and the Iowa Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## JURY DEMAND

Plaintiff requests a trial by jury on all of his claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

    a. A declaration that Defendants misclassified Plaintiff and Class Members as independent contractors instead of employees;

    b. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

    c. An order permitting this litigation to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Iowa Class;

    d. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Class;

    e. Injunctive relief requiring Defendants to comply with all applicable federal and state laws and cease their illegal practices;

    f. A judgment in favor of Plaintiff and Class Members for all penalties and liquidated damages allowed by law;

      g.    An award of pre-judgment and post-judgment interest to Plaintiff and Class Members;

      h.    An award of attorney's fees and costs as provided by law; and

      i.    Any other relief to which the Plaintiff and Class Members may be entitled.

Respectfully submitted,

JONATHAN GUY, individually and on behalf of all persons similarly situated,

By his attorneys,

/s/ Nathan T. Willems
Nathan T. Willems, AT0009260
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P. O. Box 637
Cedar Rapids, IA 52406-0637
Telephone: (319) 363-5209
Facsimile: (319) 363-6664
nate@rushnicholson.com

Harold Lichten (Mass. BBO # 549689)*
Benjamin J. Weber (Mass. BBO # 673736)*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bweber@llrlaw.com

Attorneys for Plaintiff
and the Proposed Classes
*Application for Admission to be Filed