**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| **JONATHAN GUY, JOHN COLLINS,** | : | |
| **ALBERT WALKER, CHRISTOPHER** | : | **No. 4:20-cv-331** |
| **BRIDGES, JEFF ELLIOTT, and PHILIP** | : | |
| **GRICE individually and on behalf of all** | : | |
| **persons similarly situated,** | : | **[PROPOSED] SECOND AMENDED** |
| | : | **COMPLAINT—CLASS AND** |
| **Plaintiff,** | : | **COLLECTIVE ACTION** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **DMG INSTALLATIONS, INC., CENTRAL** | : | |
| **COMMUNICATIONS, INC., MEDIACOM** | : | |
| **COMMUNICATIONS CORP.,** | : | |
| **COMMUNICATIONS UNLIMITED, INC.** | : | |
| **and COMMUNICATIONS UNLIMTED** | : | |
| **CONTRACTING SERVICES, INC.,** | : | |
| **Defendants.** | | |

Plaintiffs Jonathan Guy, John Collins, Albert Walker, Christopher Bridges, Jeff Elliott, and

Phillip Grice through theirs undersigned counsel, individually and on behalf of all persons

similarly situated, files this Class and Collective Action Complaint against Defendants DMG

Installations, Inc. ("DMG"), Central Communications, Inc. ("CCI"), Mediacom Communications,

Corp. ("Mediacom") Communications Unlimited, Inc. and Communications Unlimited

Contracting Services, Inc. (referred to collectively as "CUI") (collectively, "Defendants"), seeking

all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"),

and Iowa state laws.  Plaintiffs allege that although Defendants classified them and other similarly

situated technicians as independent contractors, they were in fact Defendants' employees under

the FLSA and state wage laws, were not paid for all hours worked, nor paid minimum wage or

overtime, and that Defendants made deductions from their compensation that were not for their

benefit.  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district, and Defendants DMG, CCI and Mediacom maintain physical locations within this judicial district.

## PARTIES

4.      Plaintiff Jonathan Guy is an individual residing in Des Moines, Iowa.  Between approximately December 2018 and May 2020, Plaintiff Guy worked for Defendants DMG, CCI and Mediacom as a cable installation technician.

5.      While working for Defendants, Plaintiff Guy worked for Defendants DMG, CCI and Mediacom out of a DMG/CCI facility in Des Moines, Iowa.  During his work for Defendants, Plaintiff Guy worked five to six days a week, about twelve hours per day, and did not receive overtime compensation at any time during the class period.

6.      Plaintiff John Collins is an individual residing in Delmar, Delaware.  Between approximately March 2017 and September 2020, Plaintiff Collins worked as a cable installation technician for Mediacom through subcontractors including CUI.  Collins most recently performed installation and repair services for Defendants in Delaware and Maryland out of a facility in Roxana, Delaware.

7.      Plaintiff Albert Walker is an individual residing in Newport News, Virginia.  From approximately September 2018 to the present, Walker has worked as a cable installation technician for Mediacom through CUI and subcontractors such as Coastal Pride, Broadband Installations and Bamcis Cabling out of Eatonton, North Carolina, X1 Communications in Santa Rosa, Florida, and through CRVS in Mobile, Alabama.

8.      Plaintiff Christopher Bridges is an individual residing in Gloucester, Virginia. From August 2020 to the present, Bridges has worked as a cable installation technician for Mediacom out of a CUI and Bamcis Cabling facility in Eatonton, North Carolina performing installation and repairs in North Carolina.

9.      Plaintiff Jeff Elliott is an individual residing in Ocean Pines, Maryland.  From approximately March 2016 to December 10, 2020, Elliott worked as a cable installation technician for Mediacom in Delaware and Maryland.  From March 2016 to March 2019, Elliott worked for Mediacom through Broadband Installations, then from March 2019 to December 2020, Elliott worked for Mediacom through CUI and Bamcis.

10.      Plaintiff Philip Grice is an individual residing in Seaford, Delaware.  From approximately October 2016 to the present, Grice has worked as a cable installation technician for Mediacom in Delaware, Maryland, and North Carolina.  From October 2016 to March 2019, Grice worked for Mediacom through Broadband Installations and from March 2019 to the present, Grice has worked for Mediacom through CUI and Bamcis out of a CUI and Bamcis facility in Roxana, Delaware.

11.      During their work for Defendants, Plaintiffs normally worked six days a week, and at least ten to twelve hours per day, but did not receive overtime compensation at any time during the class period. Plaintiffs worked well more than 40 hours per week virtually every week

that they performed services for Mediacom, and averaged at least 60 hours per week with no overtime paid to them.

12.     In addition, because Plaintiffs worked an average of at least 60 hours a week and had deductions taken from their pay by Defendants, Plaintiffs routinely earned less the state and federally-mandated minimum wage where they worked.

13.     Defendant DMG Installations, Inc., is a Missouri corporation with its principal places of business located in Des Moines, Iowa. DMG is in the business of providing and managing cable installers who install and repair cable television, internet and phone service to customers of Defendant Mediacom.   In approximately 2019, DMG adopted the fictitious name "Central Communications, Inc." and continues to do business under its fictitious name. DMG hires cable installation technicians throughout the United States but intentionally misclassifies these technicians as independent contractors, even though they are in fact employees.

14.     Defendant Central Communications, Inc., is a fictitious name adopted by DMG in 2019 with its principal place of business in Des Moines, Iowa.  When Plaintiff refers to DMG only in the paragraphs below, this is meant to include CCI.

15.     Defendant Mediacom Communications Corp. is a Delaware corporation, authorized to do business in the State of New York.  Mediacom's principal place of business and corporate headquarters is located at One Mediacom Way, Mediacom Park (Chester), New York 10918.  Mediacom is in the business of providing, installing, and repairing cable television, internet, and phone service for residential and business customers throughout certain regions in the United States, including the Southeast and Midwest.

16.     CUI is a trade name used by the Defendants Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc.

17.     Defendant Communications Unlimited, Inc. is a corporation organized under the laws of the State of Delaware. Communications Unlimited, Inc. maintains a place of business in Roxana, Delaware and conducts business under the name CUI.

18.     Communications Unlimited Contracting Services, Inc. is a foreign corporation organized under the laws of the State of Florida. Communications Unlimited Contracting Services, Inc. conducts business in Alabama, Delaware, Maryland, North Carolina, and Florida, under the name CUI.

## CLASS DEFINITIONS

19.     Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following opt-in litigants:

> All technicians who were classified as independent contractors while performing installation work for Mediacom and CUI in the United States from three years prior to the filing of the Second Amended Complaint to the present and all technicians who were classified as independent contractors while performing installation work for Mediacom and DMG since October 27, 2017 to the present (the "FLSA Overtime Class").[1]

20.     Plaintiffs bring Count II of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following opt-in litigants:

> All technicians who were classified as independent contractors while performing installation work for Mediacom and CUI or DMG in the United States from three years prior to the filing of the Second Amended Complaint to the present, and who went through a training period within the last three years (the "FLSA Training Period Class").

---

[1]     Plaintiff Jonathan Guy originally filed this lawsuit on October 27, 2020, on behalf of a class including all technicians who performed installations and repairs for Mediacom through DMG Installations, Inc. and Central Communications, Inc., which upon information and belief, occurred in Iowa and California.  The original class of these DMG technicians dates back to October 27, 2017.  While the proposed class continues to include individuals who worked for Mediacom through DMG since October 27, 2017, the remaining class members who worked for Mediacom through CUI would only go back to three years prior to the filing of the Second Amended Complaint.

21.     Plaintiff Guy brings Counts III and IV of this lawsuit as a class action pursuant to

FED. R. CIV. P. 23, on behalf of himself and the following class:

> All technicians who were classified as independent contractors while performing
> installation work for DMG Installations, Inc., Central Communications, Inc., and
> Mediacom in State of Iowa from October 27, 2018 to the present (the "Iowa
> Class").

22.     Plaintiffs Collins, Elliot, and Grice ("Delaware Plaintiffs") bring Counts V and VI

of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of Plaintiffs and the

following class:

> All technicians who were classified as independent contractors while performing
> installation work for Mediacom in State of Delaware from three years prior to filing
> the Second Amended Complaint to the present (the "Delaware Class").

23.     Plaintiffs Walker, Bridges, and Grice ("North Carolina Plaintiffs") brings Counts

VII of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of Plaintiffs and the

following class:

> All technicians who were classified as independent contractors while performing
> installation work for Mediacom in State of North Carolina from three years prior to
> filing the Second Amended Complaint to the present (the "North Carolina Class").

24.     Plaintiffs Collins, Elliot, and Grice ("Maryland Plaintiffs") bring Counts VIII and

IX of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of Plaintiffs and the

following class:

> All technicians who were classified as independent contractors while performing
> installation work for Mediacom in the State of Maryland from three years prior to
> filing the Second Amended Complaint to the present (the "Maryland Class").

25.     Plaintiff Walker brings Count X of this lawsuit as a class action pursuant to Fed. R.

Civ. P. 23, on behalf of Plaintiffs and the following class:

> All technicians who were classified as independent contractors while performing
> installation work for Mediacom in the State of Florida from three years prior to
> filing the Second Amended Complaint to the present (the "Florida Class").

26.     The FLSA Class, Iowa Class, Delaware Class, the North Carolina Class, the Maryland Class, and the Florida Class are together referred to as the "Classes."

27.     Plaintiffs reserve the right to redefine the Classes prior to filing a motion for notice to similarly situated employees pursuant to 29 U.S.C. § 216(b), prior to filing a motion for class certification pursuant to FED. R. CIV. P. 23, and thereafter, as necessary.

## FACTS

### MEDIACOM'S FISSURED EMPLOYMENT OF PLAINITFFS AND ITS OTHER TECHNICIANS

28.     Mediacom provides its customers all over the United States with cable television, internet, and telephone services.

29.     Mediacom contracts with CUI to perform installations and repairs for Mediacom customers throughout the United States, including in Alabama Delaware, Maryland, Florida, and North Carolina.

30.     CUI then contracts with smaller entities, such as Bamcis Cabling, and X1 Communications, to secure labor to perform installations and troubleshoot for Mediacom customers throughout the United States.

31.     Subcontractors, such as Bamcis, X1 Communications, and CRVS, are reliant on CUI for  their earnings, and, thus, their earnings are significantly driven by the number of technicians performing installation services for Mediacom customers and the fees that CUI charges Mediacom for these services.

32.     Mediacom contracts with DMG to perform installations and troubleshoot for its customers in Iowa.

33.     In addition, upon information and belief, Mediacom also contracts with DMG to perform installations and troubleshoot for its customers in California.

34.     Mediacom employs managers in each geographic areas where they closely monitor the work of the technicians provided through CUI and the subcontractors and DMG.

35.     Mediacom exerts significant control over the named and class member technicians in this case  regarding the essential terms and conditions of their work for Mediacom.

36.     At the same time, Mediacom hires and utilizes its own employee technicians to perform the same cable, internet, and telephone installation and repairs, that the plaintiffs perform.

37.     Mediacom charges customers for installations at rates determined solely by Mediacom.  Mediacom then pays a portion of these charges to CUI, which in turn pays a portion of the payments to Plaintiffs and Class Members, often through a subcontractor such as Bamcis or Coastal Pride.

38.     Plaintiffs and Class Members in this case are misclassified as independent contractors, when the economic reality of their work is that of employees, and Defendants retained the right of control and, in fact, actually did control the work of Plaintiffs.

39.     Plaintiffs and Class Members qualify as employees of both Mediacom and CUI under the FLSA and state laws of Delaware, Florida, Maryland, and North Carolina, as further described below.

### MEDIACOM AND CUI CONTROL OVER THE WORK PERFORMED BY PLAINTIFFS AND CLASS MEMBERS

40.     The work performed by Plaintiffs and Class Members is an integral part of Mediacom's, CUI's and DMG's business.

41.     Indeed, without Plaintiffs and Class Members installation services, Mediacom could not sell its product.

42.     Mediacom assigns Plaintiffs and Class Members a unique technician ID number and requires the technicians to use a Mediacom app to download their work assignments and log the beginning and end of each job.

43.     Mediacom, CUI, and DMG instruct Plaintiffs and Class Members concerning how to do their work and dictates the detail of the performance of their jobs.  For example:

   a.     Mediacom requires Plaintiffs and Class Members to perform their work in accordance with Mediacom's policies, manuals, standard operating procedures and Mediacom's requirements.

   b.     Most of the Plaintiffs and Class Members were required to report to a CUI facility each day by 7:00 a.m. or to a DMG facility by 7:30 a.m.  Some technicians, including Plaintiffs Walker and Bridges, worked out of their homes and were required to go to a Bamcis facility once or twice a week.

   c.     Mediacom assigns Plaintiffs and Class Members with their routes each day through an app, requires Plaintiffs and other Class Members to activate their route by 7:00 a.m., requires Plaintiffs and other Class Members to log in and confirm that they are in-route by 7:45 a.m., and requires Plaintiffs and other Class Members to arrive at their first stop by 8:15 a.m.

   d.     Mediacom assigns each technician his complete routes for the day, and the technicians are required to perform the jobs in the order they are assigned within time windows designated by Defendants.

   e.     CUI and DMG are able to change the routes after they are assigned by Mediacom without any input from Plaintiffs and Class Members.

f.      Mediacom, CUI, and DMG require Plaintiffs and Class Members to wear a uniform with shirt with a logo stating "Mediacom" or "Contractor for Mediacom." Plaintiffs were also required to wear a hat stating "CUI" or "Contractor for Mediacom." The uniform included shirts, hats, khaki pants, and work shoes (no sneakers).

g.      Mediacom, CUI, and DMG require Plaintiff and Class Members to wear badges stating "Mediacom" or "Contractor for Mediacom" on it.

h.      Mediacom and CUI require Plaintiffs and Class Members to display magnetic logos on their vehicles at all times stating "Contractor for Mediacom."

i.      Mediacom, not Plaintiffs or Class Members, conducts all of the billing and invoicing for the technicians' work.

j.      Plaintiffs and Class Members have no control over what prices to charge. All negotiations over the cost of the work and compensation paid to Plaintiffs are determined between CUI and Mediacom.

k.      Plaintiffs and Class Members are not permitted to provide Defendants' customers with any additional products without the authorization of Mediacom directly.

l.      Mediacom and DMG performs in-field inspections of Plaintiff's and Class Members' work.

m.      Mediacom requires Plaintiffs and Class Members to report the beginning and end of each installation throughout the day using a Mediacom app.

n.      Mediacom, CUI, and DMG required Plaintiffs to start jobs on time and penalized them if they were late for a job. If Plaintiffs were late for a job, Mediacom and CUI deducted $20 from the compensation Plaintiffs received for the job.

    o.    Mediacom and CUI tracked each technician's progress throughout the day; and if a technician was running late, an employee of Mediacom would call the technician to find out why he was late.

    p.    If there was a customer complaint, Mediacom contacted Plaintiffs and Class Members directly with instructions for handling the complaint.

    q.    CUI and DMG requires Plaintiff and Class Members to be monetarily liable for any missing inventory, security tool or equipment.

    r.    Defendants, not Plaintiff or Class Members, may change the terms of the working arrangement without notice at any time.

44.    Mediacom performed daily quality control checks of the installations performed by Plaintiff and Class Members.  If the quality control checks identified any issues, the technicians would be charged and would be required to fix any problems without compensation.

45.    In addition to reserving the right to control the work performed by Plaintiffs and Class Members pursuant to the technicians' contracts, Mediacom, CUI, and DMG in fact, exercise control over the method and manner in which Plaintiffs and Class Members perform their labor for Mediacom's clients.

46.    Mediacom tracks Plaintiffs' and Class Members' performance through customer ratings  created and maintained by Mediacom.

47.    Mediacom could terminate Plaintiffs and Class Members directly or through CUI or DMG.  For example, on December 10, 2020, a Mediacom manager wrote to several CUI managers that Plaintiff Jeff Elliott "needs to be removed from the field" and Elliott was subsequently terminated.

48.    Mediacom and CUI could further require certain technicians they label as traveling techs to switch locations and to work under different, interchangeable, subcontractors. For example, while Plaintiff Albert Walker was based out of North Carolina, he was told on several occasions by CUI managers that Mediacom had requested that he and other traveling techs move to other states, including Florida and Alabama, to help Mediacom set up new operations.

49.    Plaintiffs and Class Members are required to use Mediacom's dispatch system and are in frequent contact with Mediacom personnel throughout the workday.

50.    Additionally, CUI, DMG, and other subcontractor managers were required to be in contact with Mediacom on a daily basis regarding the performance of the technicians.

51.    Mediacom has so-called in -house cable installation technicians who it classifies as employees at all of its locations who perform similar work to that of Plaintiffs and Class Members.

52.    Mediacom maintained ratings of the technicians' performance, and Plaintiffs were subject to termination or warnings if their metrics were considered by Mediacom to be below its standards.

## PLAINTIFF AND CLASS MEMBERS ARE DEFENDANTS' EMPLOYEES AS A MATTER OF ECONOMIC REALITY

53.    Plaintiffs and Class Members perform core work that is integral to their businesses.

54.    Plaintiffs and Class Members are not in business for themselves and have no meaningful opportunity for profit or loss. They are assigned all of their work by Defendants and are paid a flat rate which is dictated to them by Defendants.

55.    Plaintiffs and Class Members' investment in tools and insurance they are required by Defendants to purchase is minor relative to the Defendants' investment in the equipment and infrastructure necessary to provide cable television, internet, and phone services to Mediacom customers.

56.     Cable installation requires no special skill as it can be learned during a training period that lasts no longer than a few weeks.  Moreover, Plaintiffs and Class Members are not required to exercise business skills, judgment, or initiative, as all of their work is provided by Defendants and they are paid at rates determined solely by Defendants.

57.     Plaintiffs work on a full-time, permanent basis for Defendants.  In fact, Plaintiffs worked for Defendants exclusively for years at a time, working five to seven days a week on a full-time basis.  Class Members similarly worked exclusively for Defendants on a full-time basis.

58.     As described above, Defendants exercise extensive and nearly complete control over every aspect of Plaintiffs' and Class Members' work.

59.     By virtue of the extensive control Defendants exert over them and the nature of their relationship with Defendants, the technicians are not independent business operators or agents of independent business operators, as Defendants have classified them, but rather, all technicians that perform work on behalf of Defendants are employees of Defendants under the FLSA, Iowa, Delaware, North Carolina, Maryland, and Florida state law.

**DEFENDANTS SUBJECT PLAINTIFF AND THE CLASS MEMBERS TO AN UNLAWFUL PAYMENT SCHEME**

60.     Plaintiffs and Class Members are paid a flat rate on a per-job basis with a rate schedule over which they have no control.

61.     Plaintiffs and Class Members suffer chargebacks, for equipment, and damage claims made by customers, which are from the technicians' paychecks.

62.     In addition, a five percent retainage is taken from Plaintiffs checks every week to cover chargebacks for trouble calls and return service calls.

63.    If there is a trouble call or return service call on a job performed by plaintiffs within 90 days, the cost of repair or the total cost of the job is deducted from Plaintiffs' and the other Class Members pay or from their retainage.

64.    Plaintiffs and the Class Members had no opportunity to dispute a claim of a faulty installation and the chargeback was for the full job, even if only part of the job was causing the problem.

65.    If Mediacom determined that Plaintiffs and the other Class Members failed a quality control check performed by Mediacom,  $30 to $50 was deducted from Plaintiffs' pay.

66.    Plaintiffs and the other Class Members are required to purchase equipment and tools and these amounts are deducted  from their paychecks.

67.    Plaintiffs and Class Members were scheduled by Defendants to work five to six days a week, with routes lasting 10 to 12 hours per day and, therefore, worked in excess of forty hours per week in virtually each week every week that they worked for Defendants.

68.    Plaintiffs received no overtime compensation for all hours worked over forty in a workweek.

69.    New technicians  work a  training period usually about two weeks. For this they are paid only a small flat rate $200 to $300 for each week, and the technicians do not receive minimum wage during their training periods.

70.     Experienced technicians  go through the same two-to-three-week training with no pay.

71.     Plaintiffs and Class Members often fail to receive state or federally-mandated minimum wage for all hours worked due to: 1) deductions taken from their pay; 2) being required

to perform repair work without compensation; and 3) being required to pay for gas, equipment and insurance that are for the benefit of Defendants.

72.    Defendants have intentionally permitted Plaintiffs and Class Members to be misclassified as independent contractors.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

73.    Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class as defined above.

74.    Plaintiff desires to pursue his FLSA claim on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

75.    Plaintiff and the FLSA Class are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated minimum for all hours worked.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation, and payroll practices.

76.    Specifically, Defendants misclassified Plaintiff and the FLSA Class as independent contractors and paid them a piece rate and no overtime.

77.    The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

78.    Defendants employ many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. mail and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose

of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of several state law classes defined below.

80.     The members of each Class are so numerous that joinder of all members is impracticable.  Upon information and belief, there are more than forty members of each Class.

81.     Plaintiffs will fairly and adequately represent and protect the interests of each Class because there is no conflict between the claims of Plaintiffs and those of each Class, and Plaintiff's claims are typical of the claims of each Class.  Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

82.     There are questions of law and fact common to the proposed each Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants employ Plaintiffs and the Class Members and have violated and continues to violate several state laws through their policy or practice of not paying its technicians minimum wage or overtime and subject the technicians to deductions from their wages in violation of state law.

83.     Plaintiffs' claims are typical of the claims of each Class in the following ways, without limitation:  (a) Plaintiffs is a member of each Class; (b) Plaintiffs' claims are of the same policies, practices and course of conduct that form the basis of the claims of each Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of each and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the

Members; of each Class and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the members of each Class.

84.    Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to each Class predominate over any questions affecting only individual Class Members.

85.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Each Class is readily identifiable from Defendants' own records.  Prosecution of separate actions by individual members of the Each Class would create the risk of inconsistent or varying adjudications with respect to individual Each Class members that would establish incompatible standards of conduct for Defendants.

86.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Further, the amounts at stake for many of the members of each Class, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

87.    Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs and each Class.  Plaintiff envisions no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the FLSA Minimum Wage and Overtime Provisions
### (On Behalf of Plaintiffs and the FLSA Class against All Defendants)

88.    All previous paragraphs are incorporated as though fully set forth herein.

89.    The FLSA requires that covered employees be compensated overtime pay for all hours worked over forty hours at no less than one and a half times their regular rate of pay.  See 29 U.S.C. § 207.

90.    Additionally, the FLSA requires employers must provide workers' weekly wages "in cash or in facilities," "free and clear" of improper deductions, at a rate no lower than the minimum wage rate ($7.25 since July 24, 2009).  See 29 U.S.C. § 206(a)(1).

91.    The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d).  The FLSA's definition of "employ" broadly covers anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. 203(g).

92.    Defendants are subject to the wage requirements of the FLSA because they are "employers" under 29 U.S.C. §§ 203(d) and (s) because each has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

93.    At all relevant times, Plaintiffs and the FLSA Class are covered employees entitled to the above-described FLSA's protections.  See 29 U.S.C. § 203(e).

94.    Plaintiffs and the FLSA Class are entitled to be paid overtime for hours worked over forty in a workweek, pursuant to 29 U.S.C. § 207.

95.    Plaintiffs and the FLSA class are entitled to be paid minimum wage for all hours worked "free and clear" of deductions pursuant to 29 U.S.C. § 206.

96.     Defendants do not maintain accurate records of all hours that Plaintiffs and the FLSA Class worked each workday and the total number of hours worked each workweek as required by the FLSA.  See 29 C.F.R. § 516.2(a)(7).

97.     Defendants, pursuant to their policies and practices, knowingly failed ensure that Plaintiffs and the FLSA Class received overtime compensation for all hours worked over forty in a workweek in violation of 29 U.S.C. § 207.

98.     Plaintiffs and the FLSA class did not receive minimum wage for all hours worked in weeks where they were not paid for return service or repair work, incurred substantial deductions from their pay, and incurred expenses.

99.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

100.    Pursuant to 29 U.S.C. § 216(b), employers such as Defendants who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the FLSA – Training Periods**
**(On Behalf of Plaintiffs and the FLSA Class against Defendants DMG Installations, Inc. and Central Communications, Inc. (referred to collectively as "DMG") and Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc. (referred to collectively as "CUI")**

101.    All previous paragraphs are incorporated as though fully set forth herein.

102.    Defendants DMG and CUI failed to pay Plaintiffs and the FLSA class minimum wage and overtime for their training periods.

103.    The FLSA requires that covered employees be compensated overtime pay for all hours worked over forty hours at no less than one and a half times their regular rate of pay.  <u>See</u> 29 U.S.C. § 207.

104.    Additionally, the FLSA requires employers to provide workers' weekly wages "in cash or in facilities," "free and clear" of improper deductions, at a rate no lower than the minimum wage rate ($7.25 since July 24, 2009).  <u>See</u> 29 U.S.C. § 206(a)(1).

105.    The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d).  The FLSA's definition of "employ" broadly covers anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. 203(g).

106.    DMG is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s) because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

107.    CUI is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s) because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

108.    DMG and CUI knowingly failed to pay Plaintiffs and the FLSA Class minimum wage or overtime during their training periods in violation of 29 U.S.C. §§ 206-207.

109.    In violating the FLSA, DMG and CUI acted willfully and with reckless disregard of clearly applicable FLSA provisions.

110.    Pursuant to 29 U.S.C. § 216(b), DMG and CUI shall be liable to Plaintiffs and the FLSA Class for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT III**
**Violation of the Iowa Wage Payment Collection Law**
**(On Behalf of Plaintiff Guy and the Iowa Class Against Defendants DMG Installations, Inc.,**
**Central Communications, Inc., and Mediacom Communications Corp.)**

111.    All previous paragraphs are incorporated as though fully set forth herein.

112.    Iowa's Wage Payment Collection Law ("IWPCL") requires an employer to pay all wages due to its employees.  See Iowa Code § 91A.5.

113.    Defendant DMG is subject to the wage requirements of the IWPCL because DMG is an "employer" under Iowa Code § 91A.2.

114.    Defendant Mediacom is subject to the wage requirements of the IWPCL because Mediacom is an "employer" under Iowa Code § 91A.2.

115.    At all relevant times, Plaintiff Guy and the Iowa Class Members are covered employees entitled to the above-described IWPCL protections.  See Iowa Code § 91A.2.

116.    Plaintiff Guy and the Iowa Class are not exempt from the requirements of the IWPCL for wage payments.

117.    Defendants, pursuant to their policies and practices, made unlawful deductions from Plaintiff Guy and the Iowa Class Members compensation in violation of the IWPCL.  Iowa Code § 91A.5.

118.    Pursuant to Iowa Code § 91A.8, an employer such as Defendants who fails to pay an employee wages in conformance with the IWPCL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

119.    In violating Iowa law, Defendants acted willfully and with reckless disregard of clearly applicable IWPCL provisions.

**COUNT IV**
**Unjust Enrichment Under Iowa Law**
**(On Behalf of Plaintiff Guy and the Iowa Class Against Defendants DMG Installations,
Inc., Central Communications, Inc., and Mediacom Communications Corp.)**

120.    All previous paragraphs are incorporated as though fully set forth herein.

121.    Defendants DMG and Mediacom received and benefited from the uncompensated labors of Plaintiff Guy and the Iowa Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

122.    At all relevant times hereto, Defendants DMG and Mediacom devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiff and the Iowa Class without paying wages for all hours worked, by making unauthorized deductions from Plaintiff's pay, and by requiring Plaintiff to pay for Defendants' own business expenses.

123.    By reason of having secured the work and efforts of Plaintiff Guy and the Iowa Class without paying wages for all hours worked as required by law, Defendants DMG and Mediacom enjoyed reduced overhead with respect to their labor costs and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiff Guy and the Iowa Class.

124.    Accordingly, it would be inequitable for Defendants DMG and Mediacom to retain the benefit of Plaintiff Guy's and the Iowa Class's services without paying them wages for all hours worked as required by law.

125.    Plaintiff Guy and the Iowa Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

**COUNT V**
**Violation of the Delaware's Wage Payment and Collection Act – Deductions**
**(On Behalf of Plaintiffs Collins, Elliot, and Grice and the Delaware Class Against Defendants**
**Mediacom Communications Corp., Communications Unlimited, Inc. and Communications**
**Unlimited Contracting Services, Inc.)**

126.    All previous paragraphs are incorporated as though fully set forth herein.

127.    Defendants Mediacom and CUI are subject to the wage requirements of the Delaware's Wage Payment and Collection Act ("DWPCA") because Defendants are "employers" under Del. Code Ann. tit. 19, § 1101(a).

128.    At all relevant times, Delaware Plaintiffs and the Delaware Class are covered employees entitled to the above-described DWPCA's protections. See Del. Code Ann. tit. 19, § 1101(a).

129.    Defendants Mediacom and CUI have intentionally withheld portions of wages paid to Delaware Plaintiffs and the Delaware class in violation of Del. Code Ann. tit. 19, § 1107.

130.    Defendants Mediacom and CUI are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of Delaware Plaintiffs' and the Delaware Class' wages that concern this lawsuit.

131.    Defendants Mediacom and CUI do not have written authorization from Delaware Plaintiffs or any members of the Delaware Class to withhold, divert or deduct any portion of his or her wages that concern this lawsuit.

132.    Furthermore, deductions that Defendants Mediacom and CUI make reduce Delaware Plaintiffs and the Delaware Class' wages below the minimum wage rate for non-overtime hours.

133.    Pursuant to Del. Code Ann. tit. 19, § 1113, an employer, such as Mediacom and CUI, unlawfully withhold an employee's wages pursuant to the DWPCA shall be liable to the

employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

134.    In violating Delaware law, Defendants Mediacom and CUI acted willfully and with reckless disregard of clearly applicable DWPCA provisions.

**COUNT VI**
**Violation of the Delaware's Minimum Wage Law – Minimum Wage**
**(On Behalf of Plaintiffs Collins, Elliot, and Grice and the Delaware Class Against Defendants Mediacom Communications Corp., Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc.)**

135.    All previous paragraphs are incorporated as though fully set forth herein.

136.    Defendants Mediacom and CUI are subject to the wage requirements of the Delaware's Minimum Wage Act ("DMWA") because Defendants are "employers" under Del. Code Ann. tit. 19, § 901.

137.    At all relevant times, Delaware Plaintiffs and the Delaware Class are covered employees entitled to the above-described DMWA's protections. See Del. Code Ann. tit. 19, § 901.

138.    Defendants Mediacom and CUI have intentionally failed to pay Delaware Plaintiffs the minimum wage for all hours worked in violation of Del. Code Ann. tit. 19, § 902.

139.    Pursuant to Del. Code Ann. tit. 19, § 911, an employer, such as Mediacom and CUI, unlawfully withhold an employee's wages pursuant to the DMWL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

140.    In violating Delaware law, Defendants Mediacom and CUI acted willfully and with reckless disregard of clearly applicable DMWA provisions.

**COUNT VII**
**Violation of the North Carolina's Wage Payment and Collection Act – Deductions**
**(On Behalf of Plaintiffs Walker, Bridges, and Grice and the North Carolina Class Against**
**Defendants Mediacom Communications Corp., Communications Unlimited, Inc. and**
**Communications Unlimited Contracting Services, Inc.)**

141.    All previous paragraphs are incorporated as though fully set forth herein.

142.    Defendants Mediacom and CUI are subject to the wage requirements of the North

Carolina's Wage and Hour Act ("NCWHA") because Defendants are "employers" under N.C.

GEN. STAT. § 95-25.2(5).

143.    At all relevant times, North Carolina Plaintiffs and the Delaware Class are covered

employees entitled to the above-described NCWHA protections. See N.C. GEN. STAT. § 95-

25.2(4).

144.    Defendants Mediacom and CUI have intentionally withheld portions of wages paid

to North Carolina Plaintiffs and the Delaware class in violation of N.C. GEN. STAT. § 95-25.8.

145.    Defendants Mediacom and CUI are not permitted by state or federal law, or by

order of a court of competent jurisdiction, to withhold or divert any portion of North Carolina

Plaintiffs' and the North Carolina Class' wages that concern this lawsuit.

146.    Defendants Mediacom and CUI do not have written authorization from North

Carolina Plaintiffs or any members of the North Carolina Class to withhold, divert or deduct any

portion of his or her wages that concern this lawsuit.

147.    Furthermore, deductions that Defendants Mediacom and CUI make reduce North

Carolina Plaintiffs and the North Carolina Class' wages below the minimum wage rate for non-

overtime hours.

148.    Pursuant to N.C. GEN. STAT. § 95-25.22, an employer, such as Mediacom and CUI,

unlawfully withhold an employee's wages pursuant to the NCWHA shall be liable to the employee

for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

149.    In violating North Carolina law, Defendants Mediacom and CUI acted willfully and with reckless disregard of clearly applicable NCWHA provisions.

### COUNT VIII
**Violation of the Maryland Wage Payment and Collection Law – Deductions**
**(On behalf of Plaintiffs Collins, Elliot, and Grice and the Maryland Class Against Defendants Mediacom Communications Corp., Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc.)**

150.    All previous paragraphs are incorporated as though fully set forth herein.

151.    Defendants Mediacom and CUI are subject to the wage requirements of the Maryland Wage Payment and Collection Law ("MWPCL") because Defendants are "employers" under Md. Lab. & Empl. § 3-501(b).

152.    At all relevant times, Maryland Plaintiffs and the Maryland Class are covered employees entitled to the above-described MWPCL protections.

153.    Defendants Mediacom and CUI have intentionally withheld portions of wages paid to Maryland Plaintiffs and the Maryland class in violation of Md. Lab. & Empl. § 3-503.

154.    Defendants Mediacom and CUI are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of Maryland Plaintiffs' and the Maryland Class' wages that concern this lawsuit.

155.    Defendants Mediacom and CUI do not have written authorization from Maryland Plaintiffs or any members of the Maryland Class to withhold, divert or deduct any portion of his or her wages that concern this lawsuit.

156.     Furthermore, deductions that Defendants Mediacom and CUI make reduce Maryland Plaintiffs and the Maryland Class' wages below the minimum wage rate for non-overtime hours.

157.     Pursuant to MD. Lab. & Empl. § 3-507.2, an employer, such as Mediacom and CUI, unlawfully withhold an employee's wages pursuant to the MWPCL shall be liable to the employee for the wages or expenses that were not paid, interest, treble damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT IX**
**Violation of the Maryland Wage and Hour Law – Minimum Wage and Overtime**
**(On behalf of Plaintiffs Collins, Elliott and Grice and the Maryland Class Against Defendants Mediacom Communications Corp., Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc.)**

158.     All previous paragraphs are incorporated as though fully set forth herein.

159.     Defendants Mediacom and CUI are subject to the wage requirements of the Maryland Wage and Hour Law ("MWHL") because Defendants are "employers" under Md. Lab. & Empl. § 3-401(b).

160.     At all relevant times, Maryland Plaintiffs and the Maryland Class are covered employees entitled to the above-described MWHL protections.

161.     Defendants Mediacom and CUI have intentionally failed to pay overtime wages to Maryland Plaintiffs and the Maryland class in violation of Md. Lab. & Empl. § 3-415.

162.     Furthermore, deductions that Defendants Mediacom and CUI make reduce Maryland Plaintiffs and the Maryland Class' wages below the minimum wage rate for non-overtime hours in violation of Md. Lab. & Empl. § 3-413.

163.     Pursuant to Md. Lab. & Empl. § 3-427, an employer, such as Mediacom and CUI, unlawfully failed to pay minimum wage and overtime to employees shall be liable to the employee

for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT X**
**Violation of the Florida Constitution – Minimum Wage**
**(On behalf of Plaintiff Walker and the Florida Class Against Defendants Mediacom Communications Corp., Communications Unlimited, Inc. and Communications Unlimited Contracting Services, Inc.)**

164.    All previous paragraphs are incorporated as though fully set forth herein.

165.    The Florida Constitution, Fla Const. art X, § 24, requires that employers pay employees minimum wage for all hours worked.

166.    The Florida Minimum Wage Act, Fla. Stat. § 448.110, "provide[s] measures appropriate for the implementation of the [constitutional minimum wage guarantee], in accordance with the authority granted to the Legislature" by Article X, section 24, of the state constitution. Fla. Stat. § 448.110(2).

167.    Defendants Mediacom and CUI are subject to the wage requirements of the Florida Constitution and the Florida Minimum Wage Act because Defendants are "employers" under Fla. Const. art. X, § 24 and Fla. Stat. § 448.110.

168.    At all relevant times, Plaintiff Walker and the Florida Class are covered employees entitled to the above-described Florida protections.

169.    Defendants Mediacom and CUI have intentionally failed to pay minimum wage and overtime to Plaintiff Walker and the Florida class in violation of Fla. Const. art. X, § 24 and Fla. Stat. § 448.110.

170.    Furthermore, deductions that Defendants Mediacom and CUI make reduce Plaintiff Walker and the Florida Class' wages below the minimum wage rate for non-overtime hours in violation of Fla. Const. art. X, § 24 and Fla. Stat. § 448.110.

171.    Pursuant to Fla. Stat. § 448.110, an employer, such as Mediacom and CUI, unlawfully failed to pay minimum wage and overtime to employees shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## JURY DEMAND

Plaintiffs request a trial by jury on all of his claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of himself and all others similarly situated:

a.    A declaration that Defendants misclassified Plaintiffs and Class Members as independent contractors instead of employees under the FLSA and relevant state laws;

b.    An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

c.    An order permitting this litigation to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of each Class;

d.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Class;

e.    Injunctive relief requiring Defendants to comply with all applicable federal and state laws and cease their illegal practices;

f.    A judgment in favor of Plaintiffs and Class Members for all penalties and liquidated damages allowed by law;

g.    An award of pre-judgment and post-judgment interest to Plaintiff and Class Members;

h.    An award of attorney's fees and costs as provided by law; and

i.    Any other relief to which the Plaintiffs and Class Members may be entitled.

Respectfully submitted,

JONATHAN GUY, JOHN COLLINS, ALBERT WALKER, CHRISTOPHER BRIDGES, JEFF ELLIOTT, and PHILIP GRICE individually and on behalf of all persons similarly situated,

By his attorneys,


/s/ Nathan T. Willems
Nathan T. Willems, AT0009260
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P. O. Box 637
Cedar Rapids, IA 52406-0637
Telephone:  (319) 363-5209
Facsimile:  (319) 363-6664
nate@rushnicholson.com

Harold Lichten (Mass. BBO # 549689)*
Benjamin J. Weber (Mass. BBO # 673736)*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bjweber@llrlaw.com
*admitted pro hac vice

KESSLER MATURA P.C.
Troy L. Kessler**
Garrett Kaske**
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com
**pro hac vice applications forthcoming

Attorneys for Plaintiff
and the Proposed Classes

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2021, a copy of this document was served by electronic filing on all counsel of record.

  /s/ Nathan T. Willems
Nathan T. Willems