IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| Jonathan Guy, John Collins, Albert Walker, Christopher Bridges, Jeff Elliott, and Philip Grice individually and on behalf of all persons similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>DMG Installations, Inc., Central Communications, Inc., Mediacom Communications Corp., Communications Unlimited, Inc., and Communications Unlimited Contracting Services, Inc.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:20-cv-00331-SMR-SBJ |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE SETTLEMENT BETWEEN PLAINTIFFS JOHN COLLINS, ALBERT WALKER, CHRISTOPHER BRIDGES, JEFF ELLIOTT, AND PHILIP GRICE AND DEFENDANTS MEDIACOM COMMUNICATIONS CORP, COMMUNICATIONS UNLIMITED, INC. AND COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC.[1]**

## I.    INTRODUCTION

Plaintiffs John Collins, Albert Walker, Christopher Bridges, Jeff Elliott, and Philip Grice

joined this lawsuit on behalf of themselves and similarly situated technicians who were hired by

Defendants Communications Unlimited, Inc. and Communications Unlimited Contracting

Services, Inc. (hereinafter referred to collectively as "CUI") to perform installations and repairs

for Defendant Mediacom Communications Corp. customers in Delaware, Maryland, and North

---

[1]     Plaintiff Jonathan Guy has reached a separate settlement with Defendants DMG Installations, Inc. and Mediacom regarding technicians who worked for Defendants in Iowa. Plaintiffs will file a separate motion for approval of that settlement simultaneously along with the filing of the instant motion.

Carolina.[2]  Plaintiffs alleged that CUI and Mediacom misclassified them as independent

contractors and violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

("FLSA") by failing to pay them overtime for hours worked in excess of 40 a week, and further

violated the various state laws by making deductions from the technicians' pay for things such as

equipment, damage claims made by customers if further work was required on an installation

performed by the technicians within 30 days, and insurance.  Specifically, Plaintiffs alleged that

Defendants CUI and Mediacom violated Delaware's Wage Payment and Collection Act

("DWPCA"), Del. Code Ann. tit. 19, § 1107, Delaware's Minimum Wage Act ("DMWA") Del.

Code Ann. tit. 19, § 902, North Carolina's Wage and Hour Act ("NCWHA") N.C. GEN. STAT. §

95-25.8, Maryland Wage Payment and Collection Law ("MWPCL") Md. Lab. & Empl. § 3-503,

and Maryland Wage and Hour Law ("MWHL") Md. Lab. & Empl. § 3-413.

Defendants deny all of Plaintiffs' claims on the grounds that their pay policies and

practices are legal and valid under all relevant laws.

Plaintiffs and CUI reached a collective settlement (referred to hereinafter as the "CUI

FLSA Settlement') after considerable negotiations and two full-day mediation sessions with

nationally respected mediator A. Lee Parks, Jr. of Atlanta, Georgia on June 24, 2021 and July 22,

2021 for up to ███████.[3]  See Decl. of Harold Lichten ("Lichten Decl.") (attached as Ex. A) ¶¶

5-6, 10. The terms of the Parties' settlement are set forth in the Parties' CUI Settlement

---

[2]     Plaintiff Jonathan Guy originally filed this lawsuit on behalf of technicians who worked
for DMG Installations, Inc. and performed installations and repairs for Mediacom customers in
Iowa.  ECF No. 1.

[3]     Pursuant to the parties' agreement the settlement amounts have been redacted from all
papers filed in the public record.  Plaintiffs will present unredacted settlement documents to the
Court for *in camera* review.

Agreement (attached as Ex. B).[4]  The settlement provides for notice to all cable technicians who worked for or on behalf of Defendants as independent contractors during the relevant time period in Delaware, Maryland, and/or North Carolina, which is attached to the Settlement Agreement as Ex. B.  In exchange for their calculated share of the settlement (discussed below), such technicians will release any and all wage claims against CUI and Mediacom.  See Claim Form attached to Settlement Agreement as Ex. B.

Plaintiffs' Counsel believes that the negotiated CUI Settlement Agreement provides a very fair settlement for the estimated 58 individuals who were identified in Defendants' pay records as belonging to this group, including named Plaintiffs Collins, Walker, Bridges, Elliott, and Grice ("CUI FLSA Settlement Members").  Indeed, the settlement provides reasonable compensation for each FLSA Settlement Member. Fifteen of the CUI FLSA Settlement Members will be eligible to receive shares over ████ and approximately 43 out of the 59 CUI FLSA Settlement Members  will be eligible to receive shares over ████. See Settlement Distribution List (attached to the Parties' Settlement Agreement as Ex. C). The average settlement share is to be approximately ████. Id.  Many of these individuals only worked several weeks or months for or on behalf of CUI and thus will have relatively small shares, since shares will be determined based on weeks worked.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.  Indeed, this Court recently approved a similar settlement involving technicians who performed installations and repairs for Mediacom customers in Iowa,

---

[4]    Attached to this motion is an unsigned version of the Settlement Agreement.  Plaintiffs anticipate filing a fully-executed version of the agreement with the Court within a couple of days.

Georgia, Delaware, and North Carolina that was remarkably similar to this proposed settlement. See Oxford v. Broadband Installations of Iowa, 4:17-cv-00178 (S.D. Ia. August 31, 2018) (ECF No. 110).

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement between Plaintiffs Collins, Walker, Bridges, Elliott, and Grice and Defendants CUI and Mediacom; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the CUI Total Settlement Amount; 3) approving the distribution of service awards to the named Plaintiffs as described below; and 4) approving the plan of notice to the CUI FLSA Settlement Members, including approving the proposed Notice (attached as Exhibit B to the Parties' Settlement Agreement). Defendants do not oppose this Motion.

## II.    **PROCEDURAL HISTORY**

On October 27, 2020, Plaintiff Jonathan Guy filed this class and collective action, which alleged that Defendants DMG Installations, Central Communications, and Mediacom misclassified their technicians in Iowa as independent contractors and, as a result, failed to pay their technicians any overtime compensation and made unlawful deductions from their pay. ECF No. 1. On November 25, 2020, Plaintiff Guy filed an amended complaint. ECF No. 9. On December 8, 2020, Defendants DMG Installations, Central Communications, and Mediacom filed their answers to the complaint. ECF No. 21-22.

On January 18, 2021, Plaintiff Guy filed a Second Amended Complaint, adding as Plaintiffs John Collins, Phillip Grice, Albert Walker, Jeffrey Elliott, and Chris Bridges -- who performed Mediacom installations in Delaware, Maryland, and North Carolina -- and CUI as a Defendant. ECF No. 31. The Second Amended Complaint added claims under the FLSA for technicians who contracted with CUI or its related subcontractors to perform Mediacom

installations in Delaware, Maryland, and North Carolina.[5] Id.

On June 24, 2018, the Parties participated in a full-day, online mediation before nationally known employment mediator Lee Parks, who is based in Atlanta, Georgia.[6] Prior to mediation, Defendants produced pay data showing the amounts paid and deductions from the weekly pay of each technician who worked for Defendants in Delaware and Maryland from January 18, 2018 to July 2021. In addition, Defendants produce computerized data showing the beginning and end of each job performed by the Delaware and Maryland technicians since January 18, 2018. Plaintiffs then conducted a detailed damages analysis using the data provided. At the end of a full day of mediation, Plaintiffs, CUI and Mediacom were not able to reach a resolution of the CUI claims in this case. The parties agreed to meet for a second mediation after CUI produced data for its North Carolina technicians during the relevant time period. Thus, the parties met with Mediator Parks for another full-day mediation on July 22, 2021, where the parties were able to reach a settlement

The Plaintiffs, CUI, and Mediacom now present their Settlement Agreement to the Court for its approval. Plaintiffs, CUI, and Mediacom have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all CUI FLSA Settlement Members are provided with notice of the Settlement Agreement and its terms. Furthermore, Plaintiffs' Counsel

---

[5]    The Second Amended Complaint also added claims on behalf of technicians who performed Mediacom installations in Florida. Informal discovery produced for the mediation, however, suggested that CUI has not contracted with technicians to perform Mediacom installations in Florida. Thus, this settlement does not cover and claims that may have arisen in Florida, as there are likely no such claims against CUI.

[6]    The parties chose Mr. Parks knowing that his opinion in FLSA cases like this carries significant weight, given his decades of experience litigating complex employment disputes. See, e.g., Jones v. City of Columbus, Ga., 120 F.3d 248 (11th Cir. 1997) (FLSA matter); Winkler v. DeKalb County, 540 F. Supp. 169, 175 (N.D. Ga. 1981) (granting class certification and summary judgment in employment discrimination matter).

will spend significant resources tracking down CUI FLSA Settlement Members and sending out

checks at no additional cost to the FLSA Settlement Members.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement provides that the CUI FLSA Settlement Members include all

individuals who performed installation and repair work for or on behalf of CUI and on behalf of

Mediacom in Delaware, Maryland, and North Carolina from January 18, 2018 to July 22, 2021

(the "FLSA Settlement Members").  The parties agreed that, for settlement purposes only, the

Collective may be certified pursuant to the FLSA.  There are approximately 58 FLSA Settlement

Members. Each FLSA Settlement Member will be fully advised of this Settlement with the

Notice of Settlement, which is attached to the Settlement Agreement as Exhibit B.  Only

participating FLSA Settlement Members who participate in the settlement, and receive a

settlement share, will release their claims against Defendants.

### A.    Monetary Terms

The settlement amount of up to ▮▮▮▮▮ will provide reasonable compensation to the

FLSA Settlement Members for the wrongs alleged in the Complaint, particularly given the

litigation risks if the case were to move forward.

The Settlement Agreement provides that, if approved by the Court, the Total Settlement

Amount will be distributed as follows:

1.    Incentive payment of ▮▮▮▮ to Plaintiff John Collins and Christopher Bridges,

▮▮▮▮▮ to Plaintiff Albert Walker, and ▮▮▮▮ to Plaintiffs Jeffrey Elliott and Phillip Grice, who

initiated this action to benefit the entire collective of technicians who worked for Defendants,

and who actively participated in this action.

2.    An award of attorneys' fees of one-third of the gross settlement amount

▮▮▮▮▮▮ to Plaintiffs' Counsel, which will cover both their fees and expenses in litigating this

lawsuit,  the plaintiff's cost of the mediator, as well as the costs associated with administering the settlement in-house.

        3.     A payment of ███ to opt-in Plaintiff William Hamm  to resolve his retaliation claim.[7]

        4.     The remaining amount, the Net Settlement Amount, will total ███.  Based on that amount, Plaintiffs' counsel have calculated the shares to which each settlement member is entitled based on a formula that takes into account the number of weeks they worked for or on behalf of CUI. The formula is described below.

    **B.**    **Notice of The Settlement to FLSA Settlement Members, Calculation and Distribution of the Gross Settlement Amount**

        Pursuant to the Settlement Agreement, Defendants will provide Plaintiffs' counsel with the names, mailing addresses, email addresses, and phone numbers (where available) for approximately 58 CUI FLSA Settlement Members.  Plaintiffs' Counsel will distribute a Notice of Settlement to all 58 individuals by regular and electronic mail.  See Notice of Settlement (attached to the Parties' Settlement Agreement as Ex. B).  The Notice will inform the CUI FLSA Settlement Members of the settlement, how shares were calculated, the amount of their share (if they file a claim), and that, by depositing the check, CUI FLSA Settlement Members will release all of their claims against Defendants related to the Delaware, Maryland, North Carolina, and federal law claims which were raised or which could have been raised in the Complaint.

---

[7]     William Hamm filed an opt-in form in this lawsuit on January 15, 2021.  ECF No. 21-1. Around the same time, Hamm was asked by a CUI subcontractor in January 2021 to sign an arbitration agreement.  Hamm alleges that he refused to sign because he was concerned he would waive his rights in this case.  Hamm claims that he was told he would not be assigned work until he signed the arbitration agreement and Hamm asserts that he has not received work from CUI since January 2021.  As a result, Plaintiffs intended to amend the complaint to add a claim for retaliation if the parties failed to reach a resolution of this lawsuit at mediation.

Settlement Members will have 60 days to file a claim either by regular  mail or through

electronic signature.  During the 60-day claims period, Plaintiffs' counsel may send out one

reminder notice to those Settlement Members who have not responded to the notice within 30

days.

At the end of the 60-day claims period, Plaintiffs' counsel will inform CUI of each

claiming settlement member and provide the releases submitted to them. Within 30 days of the

end of the 60-day claims period, CUI will deposit the following with Plaintiffs' counsel: a) the

Claimed Settlement Amount for those individuals; b) the Court-approved attorney's fees, and c)

the Court-approved incentive payment.

Each CUI FLSA Settlement Member shall receive a settlement award calculated using

the following formula, as set forth in the Settlement Agreement.

a.    The amount of ██████ per settlement claimant will be deducted from the Net
Settlement Amount prior to the determination of *pro rata* individual settlement shares and
allocated to each opt-in so that each he or she receives at least ██████ in exchange for their release
of their claims.

b.    Each FLSA Settlement Member will be allocated a prorated share of the
available settlement funds based upon the number of weeks that they performed services for CUI
and Mediacom in Delaware, Maryland, or North Carolina from January 18, 2018 to Julu 22,
2021.

Each FLSA Settlement Member's settlement share will be treated as non-wage income

and/or damages or liquidated damages, which will be reported on an IRS Form 1099, and will

not be subject to withholding taxes.

Settlement Award checks shall be valid for one-hundred eighty (180) days from the date

they are issued.  Id. The Settlement Award Checks will be accompanied by the Notice stating the

checks are valid for 180 days.  See Settlement Agreement at Ex. B. Plaintiffs' Counsel will

attempt to contact FLSA Settlement Members whose checks are returned as undeliverable or

who have not cashed their checks to obtain updated addresses.  Lichten Decl. ¶ 17.

At the conclusion of the 180-day check void period, Plaintiffs' Counsel will return the amount of any uncashed checks to CUI.

### C.    **Release of Claims**

CUI FLSA Settlement Members who submit a claim form shall release:

> Defendants CUI and Mediacom and their past, present, and future owners, parent companies, subsidiaries, employees, affiliates, divisions, predecessors, and successors (collectively with Defendants, the "Released Parties") for any and all claims at any time through the date of the Settlement Agreement related to the alleged misclassification of them as independent contractors as opposed to employees and to Mediacom allegedly being their direct or joint employer, including, without limitation, all state, local or federal claims, obligations, demands, actions, rights, causes of action, liabilities, and damages, or any other causes of action of whatever nature, whether known or unknown for alleged unpaid overtime wages, deductions, underpayment of wages, nonpayment of wages or compensation of any type, or any and all other types of compensation, liquidated or other damages (including actual, compensatory, incidental, indirect, consequential, exemplary, punitive,) unpaid costs, penalties, interest, attorneys' fees, costs, expenses, expert costs, rescission, equitable relief, reinstatement, declaratory and/or injunctive relief, restitution or other compensation and relief arising under the FLSA or any other state, local or federal law pertaining to payment of wages

Settlement Agreement ¶ 13.

### D.    **Attorneys' Fees and Costs**

Pursuant to the Settlement Agreement, Plaintiffs' Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount ██████████, which will compensate Plaintiffs' Counsel for all work performed in this lawsuit and for all of the work remaining to be performed, including, but not limited to, documenting the Settlement, securing Court approval of the Settlement, ensuring that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. Settlement Agreement ¶ 16. Plaintiffs' Counsel out-of-pocket costs and expenses shall be included in the one-third fee. Id.  Moreover, there shall be no additional recovery for such expenses.

## IV.    **ARGUMENT**

Plaintiffs respectfully request that the Court enter the accompanying proposed order approving the Settlement. Defendants do not oppose this Motion.

A.    **Applicable Legal Standard**

1.    **Legal Standard for Approval of FLSA Settlements**

A Court may approve an FLSA settlement if "it represents a fair compromise of a bona fide wage and hour dispute." Harris v. Chipotle Mexican Grill, Inc., 2018 WL 617972, at *4 (D. Minn. Jan. 29, 2018) (citation omitted). "The district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." Jones v. Casey's Gen. Stores, Inc., 266 F.R.D. 222, 229 (S.D. Iowa 2009) (quoting Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir.1988)).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," since "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." Diaz v. Scores Holding Co., Inc., 2011 WL 6399468, *2 (S.D.N.Y. July 11, 2011). In most cases, courts do not hold hearings on such settlements, but simply review the paperwork, and, if in order, approve the settlement. See, e.g., Aros et al. v. United Rentals, Inc., 2012 WL 3060470, *2 (D. Conn. July 26, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "[t]he FLSA settlement in this case meets the standard for approval" because "[t]he settlement was a result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time."); Diaz, 2011 WL 6399468 at *2 (S.D.N.Y. July 11, 2011)

(approving settlement of opt-in plaintiffs' FLSA claims because "[t]he settlement was the result of contested litigation and arm's length negotiation."); <u>Ruiz v. GVMS, Inc.</u>, 2009 WL 3157349, *1 (S.D. Tx. Sept. 25, 2009) ("This court has reviewed the settlement agreement and finds that the amount to be paid to the plaintiffs and the amount of attorney's fees provided for in the settlement agreement are fair and reasonable."); <u>Burton v. Utility Design, Inc.</u>, 2008 WL 2856983, *2 (M.D. Fl. July 22, 2008) (adopting and confirming magistrate judge's findings and recommendation to approve the proposed settlement of individual FLSA claims for opt-in plaintiffs only); <u>Beasley v. Custom Communications, Inc.</u>, No. 15-00583 (Oct. 24, 2017 E.D.N.C.) (ECF No. 116) (approving settlement on behalf of cable installers who had opted-in to FLSA overtime and state law deductions case without a hearing).[8]

### B.    The Terms of the Proposed Settlement Are a Fair and Reasonable Resolution of a Bona Fide Dispute

"A district court may only approve an FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." <u>King v. Raineri Const., LLC</u>, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing <u>Fry v. Accent Mktg. Servs., L.L.C.</u>, No. 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1353 (11th Cir.1982));

---

[8] Because the Parties agree to stipulate to a dismissal of Plaintiffs' Rule 23 claims without prejudice in connection with this Settlement, Rule 23 does not apply.  As a result, the Court may grant approval to the settlement via a one-step process, rather than holding a final fairness hearing. <u>Gallant v. Arrow Consultation Servs., Inc.</u>, No. 1:19 Civ. 925, 2020 WL 2113399, at *2 (S.D. Ind. May 4, 2020); <u>see also</u> <u>Benoskie v. Kerry Foods, Inc.</u>, No. 19 Civ. 684, 2020 WL 5769488, at *2 (E.D. Wis. Sept. 28, 2020) (following the reasoning of now Seventh Circuit judge Amy St. Eve in <u>Briggs v. PNC Financial Servs. Grp.</u>, No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) in determining that FLSA settlements, unlike Rule 23 settlements, may be approved in a single step); Lauture v. A.C. Moore Arts & Crafts, Inc<u>.</u>, 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) ("A one-step approval process is appropriate in FLSA settlements that do not include proposed Federal Rule of Civil Procedure 23 class releases." (collecting cases).

Stainbrook v. Minnesota Dept. of Pub. Safety, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017) (same); Valencia v. Greater Omaha Packing, 8:08CV161, 2014 WL 284461, at *2 (D. Neb. Jan. 23, 2014) ("Courts should review FLSA collective action settlements to ensure 'a fair and reasonable resolution of a bona fide dispute.'").

### 1.    A *Bona Fide* Dispute Existed Between the Parties

In evaluating a motion for settlement approval under the FLSA, courts look to whether there exists a bona fide dispute. "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." King, 2015 WL 631253, at *2 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 115 (1946); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)). Thus, for example, a settlement "is the product of contested litigation where the parties dispute the amount of overtime hours Plaintiff actually worked and whether defendants refused to pay for mandatory work hours." Boland v. Baue Funeral Home Co., 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015).

There are several bona fide areas of dispute in this case. Plaintiffs allege that Defendants misclassified technicians as independent contractors under the FLSA. Courts have reached conflicting results, however, when making the determination of whether cable installers are employees or independent contractors under the FLSA. See Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 536 (E.D. La. 2011) (collecting cases); Roeder v. Directv, Inc., 2017 WL 151401, at *10 (N.D. Iowa Jan. 13, 2017) (collecting cases). Moreover, because the determination of whether a technician is an employee requires a "fact-intensive" inquiry, prior caselaw may not be dispositive on the employee-independent contractor question. Roeder, 2017 WL 151401, at *10.

Furthermore, even assuming that this Court would grant conditionally certification of collective of technicians who worked for or on behalf of CUI, Defendants could later move to

decertify the collective. Indeed, the courts in the Eighth Circuit utilize a two-step approach to collective action certification under the FLSA. See Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016); Putman v. Galaxy 1 Marketing, Inc., 276 F.R.D. 264, 269 (S.D. Iowa 2011**Error! Bookmark not defined.**). Courts have reached different conclusions when faced with motions to decertify collectives of technicians who allege that they were misclassified as independent contractors and were denied overtime pay. Compare Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 773 (7th Cir. 2013) (decertifying class of installers finding that damages calculations would have required individual trials) with Monroe v. FTS USA, LLC, 860 F.3d 389, 406 (6th Cir. 2017) (denying motion to decertify and refusing to follow Espenscheid).

In addition, because Defendants classified their technicians as independent contractors, it did not maintain complete records of the technicians' work hours. Thus, there would likely be a dispute over the amount of the technicians' overtime damages.[9] Ultimately, the Settlement that the Parties reached reflects what Plaintiffs' Counsel believes to be a fair and reasonable compromise of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

## 2.    The Proposed Settlement is Fair and Reasonable

The Eighth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement. However, district courts have looked to the following factors when evaluating a settlement under the FLSA: the stage of the litigation and amount of discovery exchanged, the experience of counsel, the

---

[9]    Furthermore, Defendants may also assert that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. See 29 U.S.C. § 255(a); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

probability of plaintiffs' success on the merits, any "overreaching" by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case. <u>King</u>, 2015 WL 631253, at *2.

The Net Settlement Amount provides FLSA Settlement Members with the recovery of unpaid overtime hours worked and deductions taken from their pay, and it was carefully negotiated based on factual discovery, a substantial investigation by Plaintiffs' Counsel, and the review and analysis of documents produced by Defendants in preparation for mediation. The FLSA Settlement Members' payments range from approximately ███████████, with the average being approximately █████. Attached is a list of the settlement shares of each technician who is eligible to files a claim. <u>See</u> Ex. C of the Parties' Settlement Agreement. The Net Settlement Amount is based on an analysis of workweeks that the FLSA Settlement Members worked for or on behalf of Defendants during the relevant time period, as per Defendants' personnel and payroll records.

If the Settlement is approved, all participating CUI FLSA Settlement Members will receive a Settlement Award from the Net Settlement Amount, and only participating CUI FLSA Settlement Members will release claims against Defendants. At the conclusion of the 180-day check void period, Plaintiffs' Counsel shall return the amounts of any uncashed checks to CUI. Defendants will not receive a release from those FLSA Settlement Members who do not file a claim.

### 3. The Allocation Formula is Fair and Reasonable

The proposed allocation formula is fair and reasonable and should be approved. <u>See</u> <u>In re Dell</u>, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting <u>In re Am. Bank Note Holographics, Inc.</u>, 127 F. Supp. 2d 418, 429–30

(S.D.N.Y. 2001) (citations omitted)); see also Chaverria v. New York Airport Serv., LLC, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, FLSA Settlement Members will receive settlement shares based on a formula that takes into account the number of weeks they worked for or on behalf of Defendants and amount of certain deductions taken from their pay. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." In re Oracle Sec. Litig., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); Slipchenko v. Brunel Energy, Inc., 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015); Schwartz v. TXU Corp., 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval. See, e.g., Oxford v. Broadband Installations of Iowa, No. 17-178 (S.D. Ia.) (approving settlement for Mediacom technicians using nearly the same formula); DeWitt v Darlington County, S.C., 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (approving a pro rata allocation of the settlement based on the number of shifts worked); Kidrick v. ABC Television & Appliance Rental, Inc., 1999 WL 1027050, at * 3 (N.D.W.V. May 12, 1999) (approving distribution of the settlement fund based on the number of workweeks each class member worked).

When, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the FLSA Settlement Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. See Edelen v. Am. Residential Servs. Inc., 2013 WL 3816986, at *9 (D. Md. July 22, 2013) ("[t]he existence of [ ] disputed legal and factual issues creates uncertainty and risk for all parties moving forward"); see

also Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 130-131 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation."). In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

The Settlement was the result of contested litigation, the production of detailed time and pay data, and arm's-length negotiations. The proposed Settlement was only reached after the Parties exchanged substantial informal discovery and conducted two full-day mediation sessions with nationally-respected mediator Lee Parks who is based in Atlanta, Georgia. As described above, Plaintiffs' Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Total Settlement Amount is based on an intensive review of the facts and law.

Plaintiffs' Counsel are experienced and respected class action litigators. See Lichten Decl. ¶¶ 2-4; Decl. of Troy Kessler ("Kessler Decl.") at ¶¶ 3-4 (attached as Ex. C). Indeed, in Oxford v. Broadband Installations of Iowa, this Court appointed Attorneys Harold Lichten and Benjamin Weber as counsel for the collective of technicians who performed work for Mediacom customers in Iowa, Delaware, North Carolina, and other states. Oxford, 4:17-cv-00178-SMR-RAW (S.D. Ia. Dec. 19, 2017) (ECF No. 47).

Based on Plaintiffs' Counsel's knowledge and expertise in this area of law, Plaintiffs' Counsel believe this Settlement will provide a substantial benefit to the FLSA Settlement Members. In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

C.    <u>The Service Awards are Justified and Should Be Approved</u>

Pursuant to the Settlement Agreement, Defendants have agreed to pay service awards of

███████ to Plaintiffs Collins, Walker, Bridges, Elliott, and Grice. Subject to Court approval,

these amounts will be paid to Plaintiffs in addition to their recovery of unpaid overtime and

deductions for the time when they worked for DMG. "Courts routinely recognize and approve

incentive awards for class representatives and deponents." <u>Wineland v. Casey's Gen. Stores,</u>

<u>Inc.</u>, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (collecting cases). In fact, courts in this Circuit have

routinely approved incentive awards in wage and hour cases much higher than the awards

requested by Plaintiffs in this case. <u>See</u>, <u>e.g.</u>, <u>Harris v. Chipotle Mexican Grill, Inc.</u>, 2018 WL

617972, at *3 (D. Minn. Jan. 29, 2018) (approving incentive payments of $15,000 two of the

named plaintiffs, $7,500 for another plaintiff, and $5,000 for a fourth plaintiff); <u>McClean v.</u>

<u>Health Sys., Inc.</u>, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (approving $5,000

incentive award to each of two named plaintiffs and a $500 service award to each of eight

deponents); <u>Wineland</u>, 267 F.R.D. at 678 (approving incentive payment of $10,000 to the named

Plaintiff). This Court approved a similar service award in the <u>Oxford</u> case. <u>Oxford</u>, 4:17-cv-

00178-RAW (S.D. Ia. Aug. 31, 2018) (approving $10,000 service award to lead named plaintiff

for a total of $32,500 in service awards to be distributed to four plaintiffs).

Here, the proposed additional payments to Plaintiffs are justified by the benefits that they

brought to the technicians who provided services to Mediacom customers in Delaware,

Maryland, and North Carolina. Plaintiffs took significant risks in coming forward to represent

the interests of his fellow employees, including risking their reputations in the community and in

their field of employment, in order to participate in this case on behalf of the collective action

members. <u>See</u> <u>Sand v. Greenberg</u>, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving

service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their

names on this lawsuit," including the risk of "blacklisting and other more subtle forms of

retaliation"); <u>Craig v. Rite Aid Corp.</u>, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal

dismissed (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims

are often retaliated against in the industry as a result of their obvious participation in such

litigation.").

Furthermore, Plaintiffs worked with Plaintiffs' Counsel, providing background

information about their employment, about Defendants' policies and practices, and about the

allegations in this lawsuit. Lichten Decl. ¶¶ 23-25. Moreover, Plaintiffs worked with counsel to

prepare for two mediations. For these reasons, the service award payments totaling ███ to

Plaintiff Collins, Walker, Bridges, Elliott, and Grice should be approved as fair and reasonable.

### D. The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the

purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the

settlement furthers the purposes of the FLSA by providing FLSA Settlement Members with

substantial recovery for their claimed unpaid overtime, that, because of the lack of bargaining

power inherent in employer-employee relationships, they may have otherwise been unable to

recover. <u>See</u> 29 U.S.C. § 202 (congressional finding and declaration of policy); <u>Brooklyn Sav.

Bank v. O'Neil</u>, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to

the unequal bargaining power as between employer and employee, certain segments of the

population required federal compulsory legislation to prevent private contracts on their part

which endangered national health and efficiency...."). Because the settlement facilitates the

FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as

reasonable.

Moreover, all CUI FLSA Settlement Members will receive the proposed Notice, which is

attached to the Settlement Agreement as Exhibit B, which is clear and straightforward, and

provides information on the meaning and nature of the terms and provisions of the Settlement

Agreement, the monetary awards that the Settlement will provide to participating FLSA

Settlement Members, including the allocation method, the scope of the release, the request for

attorneys' fees and costs, the deadline for claiming shares, and their rights should they not file a

claim form.

Accordingly, the Notice complies with the standards of fairness, completeness, and

neutrality required of a notice disseminated under authority of the Court, and should be

approved.

    **E.**    **The Request for Attorneys' Fees and Costs Should be Approved**

        **1.**    **The Fee Shifting Provision of the FLSA Provides For The Award of Attorneys' Fees**

A plaintiff in a FLSA case may recover his/her attorneys' fees and expenses under the

statute's fee-shifting provision. See 29 U.S.C. § 216(b) ("The court in such action shall, in

addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to

be paid by the defendant, and costs of the action."); Lochridge v. Lindsey Mgt. Co., Inc., 824

F.3d 780, 782 (8th Cir. 2016). In common fund cases, district courts in the Eighth Circuit have

examined a motion for attorneys' fees under one of two methods – lodestar or percentage

method. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 244 (8th Cir. 1996). It is within

the discretion of the district court to choose which method to apply, but many courts have held

that the percentage of the fund approach is preferable. Camden I Condominium Association,

Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir.1991) ("we believe that the percentage of the fund

approach is the better reasoned in a common fund case"). As another court explained, "[m]any

courts and commentators have recognized that the percentage of the available fund analysis is the

preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.,* class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." Aichele v. City of Los Angeles, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015). Here, the percentage of the fund approach should be applied given that Plaintiffs' Counsel were able to obtain significant relief for the technicians in an efficient manner based on their work in the previous Oxford case.

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" In re Xcel Energy, Inc., 364 F. Supp. 2d at 991 (quoting Petrovic, 200 F.3d at 1157). Although "[t]he Eighth Circuit has not established factors that a district court should consider when calculating the reasonable percentage to award attorney fees in a common fund case" (In re Xcel Energy, Inc., 364 F. Supp. 2d at 993), the factors commonly considered as part of this inquiry include the following:

> (1) the time and work required; (2) the preclusion of other employment by the attorney due to acceptance of this case; (3) the contingent nature of the fee; (4) the results obtained; and (5) the experience, reputation, and ability of the attorneys.

Huyer v. Wells Fargo & Co., 314 F.R.D. 621, 628-29 (S.D. Iowa 2016), aff'd sub nom. Huyer v. Njema, 847 F.3d 934 (8th Cir. 2017), and appeal dismissed sub nom. Huyer v. Van de Voorde, 847 F.3d 983 (8th Cir. 2017), and aff'd sub nom. Huyer v. Buckley, 849 F.3d 395 (8th Cir. 2017) (citing Johnson v. Ga. Highway Express, 488 F.2d 714, 719–20 (5th Cir. 1974)). These factors support approval of the requested fee and are discussed below.

### 2.      Time and Work Required

Plaintiffs' Counsel spent considerable time preparing the lawsuit to be filed. After the lawsuit was filed, Plaintiffs' Counsel worked for a significant amount of time speaking with technicians in other states and researching state law claims, which led to the adding of claims for those other states and CUI as a defendant. In addition, Plaintiffs' counsel spent considerable

time working on the litigation and settlement of <u>Oxford v. Broadband Installations of Iowa</u>, which involved similar claims on behalf of technicians who performed work for Mediacom customers in Iowa, Delaware, and North Carolina.  Indeed, the work done in <u>Oxford</u> by Plaintiffs' Counsel led to directly to the filing of this lawsuit and Defendants' willingness to resolve this matter without further litigation.

Prosecuting this matter to a successful settlement for the benefit of the FLSA Settlement Members required Class Counsel to expend a significant amount of time by attorneys, including substantial legal and factual research, two full-day mediations, and a second settlement negotiation. Additionally, Plaintiffs' Counsel will handle the settlement administration process, instead of outsourcing this role to a third-party administrator and recouping the administrators' fees and costs from the gross fund. Thus, the time and labor expended – and to be expended administering the settlement – support the requested fee.

### 3.    Difficulty and Novelty of Question Presented by The Case, as Well as the Skill Required to Perform the Legal Service Properly

Certifying any collective to afford multi-state relief against multiple defendants is a significant undertaking in terms of sophistication and risk. In this case, Plaintiff and Defendants agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiff and the CUI FLSA Settlement Members were misclassified as independent contractors and entitled to overtime compensation. Defendants would contest the number of overtime hours worked and whether deductions that were taken from technicians' compensation violated state law. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to maintain collective action certification in the action, an outcome of zero recovery for the Plaintiffs and for the FLSA Settlement Members remained possible. Plaintiffs' Counsel accepted these risks, diligently prosecuted the case, and negotiated a

meaningful and substantial recovery. Accordingly, this factor also supports Plaintiffs' Counsel's fee request.

Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. Indeed, as the U.S. District Court for the Southern District of New York observed:

> Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such a judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 747-48, aff'd, 798 F.2d 35 (2d Cir. 1986).

The wage and hour issues in this litigation are governed by the highly technical federal FLSA law and regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. See Lichten Decl. ¶¶ 2-4; Kessler Decl. ¶¶ 3-9. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

### 4. Contingent Nature of the Case and Customary Contingency Fees

Plaintiffs' Counsel agreed to represent the Named Plaintiff on a contingency fee basis. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." In re Abrams, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." Id.

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent the Named Plaintiff on a contingency fee basis. See DeHoyos v. Allstate Corp., 240 F.R.D.269, 330 (W. D. Tex. 2007) (quoting In re Prudential-Bache Energy Income P'ships Sec. Litig., 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.")  By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. The risks Plaintiffs' Counsel undertook were real, and the resources that Plaintiffs' Counsel dedicated to this action meant that such resources were not available to other cases. Plaintiffs' Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the participating CUI FLSA Settlement Members, supports the requested fees and costs.

A one-third attorneys' fee is reasonable in actions of this nature. In fact, courts in this Circuit and across the country have awarded a one-third fee in other class and collective actions. See In re U.S. Bancorp Litigation, 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1061 (D.Minn.2010) (finding that an award of 36% of a class action settlement fund was "in line with the range of fees approved by the Eighth Circuit"); Huyer v. Wells Fargo & Co., 314 F.R.D. at, 629 (approving attorneys' fees of 33 1/3% of total settlement fund); Wineland, 267 F.R.D. at 677

(approving attorneys' fees of 33 1/3% of total settlement fund of $6.7 million, plus $150,000 in

costs, in FLSA collective action on behalf of class approximately 11,400 convenience store

employees); Vela v. City of Houston, 276 F.3d 659, 681 (5th Cir. 2001) (noting fee awards

generally ranging from 35% to 40% are common in cases taken on a contingent fee basis);[10]

Fees within this range are "presumptively reasonable." Vaszlavik v. Storage Tech. Corp., 2000

WL 1268824, *4 (D. Colo. March 9, 2000). In addition, this Court approved one-third attorney's

fees to Plaintiffs' counsel as part of the settlement in Oxford v. Broadband Installations of Iowa.

Here, Plaintiffs' Counsel seek one-third of the Gross Settlement Amount as fees. As

described above, this is well within the percentage range approved in similar cases. Further, the

requested one-third of the Gross Settlement Fund includes the costs incurred by Plaintiffs'

Counsel. See Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, *6 (D. Colo. Nov. 13,

---

[10] See also Bryant v. United Furniture Indust., Inc., 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); Decohen v. Abbasi, LLC, 299 F.R.D. 469, 482-483 (D. Md. 2014) (Awarding one-third of $3,050,000 settlement fund, which amounted to a 3.9 multiplier); DeWitt v. Darlington County, S.C., 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (finding one-third fee is customary in class litigation); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (Analyzing cases from district courts throughout the country in common fund cases where attorneys' fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund," and noting that most of the cases awarded attorneys' fees at the level of 33.3% of the common fund.); Clark v. Ecolab, Inc., 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (Approving attorneys' fees of $2 million from the $6 million common fund in a FLSA collective action and noting that attorneys' fee percentages of one-third are "reasonable and consistent with the norms of class litigation in [the Second] circuit."); Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at * 2 (M.D.N.C. Jan. 10, 2007) (Noting, "in this jurisdiction, contingent fees of one-third (33.3%) are common."); Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins., 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.").

2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."). Thus, the customary fee factor supports the requested fee award.

### 5.    Experience of the Attorneys and Time and Resources Involved

As is described in detail in Plaintiffs' Counsel's declarations, Plaintiffs' Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective action cases. Counsel have shown their ability by achieving the excellent result obtained for the FLSA Settlement Members in this case. The experience, reputation, and ability of Plaintiffs' Counsel, therefore, supports the requested fee award.

Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them, as evidenced by this case. In preparing for mediation, Plaintiffs' Counsel reviewed Defendants' payroll and personnel documents and, based on the data provided, generated a detailed damages analysis consisting of various models representing different assumptions. Plaintiffs' Counsel then worked with Defendants' Counsel to answer any questions either party had on the data and damages analysis provided. More generally, Plaintiffs' Counsel possesses particularized skill, experience, and ability to litigate these types of claims.

Accordingly, the fees approved in similar cases further support the requested fee here. [11]

---

[11]    In addition, Class Counsel's requested one-third fee is reasonable given that counsel will recover their costs incurred in litigating this lawsuit from the requested fee. Indeed, the FLSA provides for the reimbursement of costs. See 29 U.S.C. § 216(b). Accordingly, "[u]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and

6.      **Lodestar Crosscheck**

As mentioned above, some district courts in the Eighth Circuit also employ a lodestar cross check to double check the reasonableness of a fee requested under the percentage-of-a-common-fund. <u>See</u> <u>In re Xcel Energy, Inc.</u>, 364 F. Supp. 2d at 993.  However, the lodestar crosscheck need not be applied here given that Plaintiffs' Counsel were able to obtain a significant result fairly quickly based on their work in the <u>Oxford</u> case.

Even if this Court were to employ a lodestar, it supports the requested fee.  Plaintiffs' Counsel have worked for approximately 220 hours in this matter and have billed approximately $92,000 and incurred an additional $5,000 in expenses.  <u>See</u> Lichten Decl. at ¶ 29-30; Kessler Decl. at ¶ 14-15.  This justifies the requested fee of ████.  Indeed, even when added to the fee in the settlement with DMG (which is described in a separate motion for approval and separate settlement agreement) that is similar, it still falls within the acceptable range of requested attorney's fees given that "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." <u>Kay Co. v. Equitable Production Co.</u>, 749 F. Supp. 2d 455, 470 (S.D.V.W. 2010); <u>In re Xcel Energy, Inc.</u>, 364 F. Supp. 2d at 999 (approving multiplier of 4.7); <u>In re UnitedHealth Group Inc. Shareholder Derivative Litig.</u>, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier); <u>Yarrington v. Solvay Pharm., Inc.</u>, 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010) (finding 2.26 multiplier appropriate).

V.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an

---

consultants, travel and other litigation-related expenses." <u>In re Cardizem CD Antitrust Litig.</u>, 210 F.R.D. 508, 535 (E.D. Mich. 2003).  The expenses incurred in this litigation to date are described in the accompanying declarations total $4,743. <u>See</u> Lichten Decl. ¶ 30; Kessler Decl. ¶ 15. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement.

order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the Total Settlement Amount; 3) approving the distribution of a service award to Plaintiffs Collins, Walker, Bridges, Elliott and Grice; 4) approving the plan of notice to the collective,  including  approving the proposed Notice; and (5) dismissing this claims of the Settlement Class Members with prejudice against Defendants. See Proposed Order (attached as Ex. D).


                                    JONATHAN GUY, JOHN COLLINS, ALBERT
                                    WALKER, CHRISTOPHER BRIDGES, JEFF
                                    ELLIOTT, and PHILIP GRICE individually and on
                                    behalf of all persons similarly situated,

                                    By his attorneys,


                                    /s/ Harold Lichten
                                    Harold Lichten (Mass. BBO # 549689)*
                                    Benjamin J. Weber (Mass. BBO # 673736)*
                                    LICHTEN & LISS-RIORDAN, P.C.
                                    729 Boylston St., Suite 2000
                                    Boston, MA 02116
                                    Telephone: (617) 994-5800
                                    Facsimile: (617) 994-5801
                                    hlichten@llrlaw.com
                                    bjweber@llrlaw.com
                                    *admitted pro hac vice

                                    KESSLER MATURA P.C.
                                    Troy L. Kessler*
                                    Garrett Kaske*
                                    534 Broadhollow Road, Suite 275
                                    Melville, New York 11747
                                    Telephone: (631) 499-9100
                                    Fax: (631) 499-9120
                                    tkessler@kesslermatura.com
                                    gkaske@kesslermatura.com
                                    *admitted pro hac vice

Nathan T. Willems, AT0009260
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P. O. Box 637
Cedar Rapids, IA 52406-0637
Telephone:  (319) 363-5209
Facsimile:  (319) 363-6664
nate@rushnicholson.com

Attorneys for Plaintiff
and the Proposed Classes

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I conferred with counsel for Defendants

Communications Unlimited, Inc., Communications Unlimited Contracting Services, Inc. and

Mediacom Communications Corp. regarding this motion and they agreed to its contents.

s/ Harold Lichten
Harold Lichten

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, a copy of this document was served by

electronic filing on all counsel of record.

/s/ Harold Lichten
Harold Lichten